UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| PRICE SIMMS HOLDINGS LLC, dba Price Simms Auto Group, a California Limited Liability Company; PRICE SIMMS, INC., dba Toyota of Sunnyvale; MARIN LUXURY CARS, LLC dba Land Rover Marin; PRICE-SIMMS PA, LLC dba McLaren San Francisco and Volvo Palo Alto; PRICE CARS SR, LLC dba Toyota Marin and Scion Marin (a/k/a Toyota & Scion Marin and Toyota Marin Used Cars); PRICE-SIMMS FAIRFIELD dba Mercedes Benz of Fairfield; and PRICE-SIMMS FORD LLC dba Ford Lincoln Fairfield,<br><br>       Plaintiffs,<br><br>  v.<br><br>CANDLE3, LLC, a Colorado Limited Liability Company,<br><br>       Defendant. | No. 2:18-cv-1851 WBS KJN<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT |

----oo0oo----

        Plaintiffs initiated this action against defendant Candle3 LLC ("Candle3") alleging breach of contract, intentional

1

misrepresentation, negligent misrepresentation, and promissory fraud.  These claims arise out of their purchase of electrical consulting and electrical fixtures from the defendant.  Presently before the court is defendant's Motion to Dismiss the Second Amended Complaint ("SAC").  (Docket No. 21.)

I. Factual and Procedural Background

Plaintiff Price Simms Holding LLC, dba Price Simms Auto Group ("Price Simms") is a California limited liability company which owns and operates automobile dealerships and service center locations.  (SAC ¶¶ 1 & 8 (Docket No. 17).)  The other six plaintiffs ("the dealership plaintiffs") are automobile dealership and service center locations which are related to, and share common ownership with, Price Simms.[1]  (Id. ¶ 8.)

On March 25, 2016, plaintiff Price Simms and defendant entered into a written contract by which defendant was to perform "clean energy" construction work for the plaintiff ("the Agreement").  (Id. ¶ 12.)  The SAC alleges that this March 25, 2016 agreement was amended and "restated" on June 28, 2016.  (Id. ¶ 14.)  That June 28 agreement is attached and incorporated into the SAC as Exhibit 2.  (Id.)  All six dealership plaintiffs were parties to the June 28, 2018, agreement;[2] each one of them signed

---

[1] These plaintiffs are: (1) Price Simms, Inc., dba Toyota of Sunnyvale; (2) Marin Luxury Cars, LLC dba Land Rover Marin; (3) Price-Simms PA, LLC dba McLaren San Francisco and Volvo Palo Alto; (4) Price Cars SR, LLC dba Toyota Marin and Scion Marin (a/k/a Toyota & Scion Marin and Toyota Marin Used Cars); (5) Price-Simms Fairfield dba Mercedes Benz of Fairfield; and (6) Price-Simms Ford LLC dba Ford Lincoln Fairfield.

[2] The SAC idiosyncratically describes the dealership plaintiffs as "obligees" of the Agreement, but the court's discussion with the parties at oral argument clarified that this word was intended as a synonym for "parties."

2

a signature sheet as a "purchaser." (See SAC Ex. 2.)  Though a signature sheet with "Price Simms Holdings LLC" is included alongside the six signature sheets on which each of the dealership plaintiffs signed, that signature sheet is blank.  (See id.)  Defendant contests plaintiffs' characterization of the June 28, 2016 agreement as a restatement of the March 25, 2016 agreement; defendant claims that the dealership plaintiffs and defendant entered into a new stand-alone contract on June 28, 2016.  (Def.'s Mem. in Supp. of Mot. to Dismiss SAC at 6 (Docket No. 21).)

On January 29, 2018, the March 25, 2016 agreement was amended in writing by defendant and Price Simms.  This amendment contained a general release stating: "[i]t is further agreed as of the date of this agreement both parties mutually release the other from any and all claims.  The parties enter into this agreement, in part, to compromise and settle all existing business issues."  (SAC Ex. 3.)  At some point following the signing of this amendment, plaintiffs terminated the Agreement based on defendant's alleged material nonperformance.  (SAC ¶ 16.)

Plaintiffs' original complaint alleged four state law counts arising out of defendant's alleged nonperformance.  These were: (1) breach of contract; (2) intentional misrepresentation; (3) negligent misrepresentation; and (4) false promise.  On July 5, 2018, defendant filed a motion to dismiss the complaint.  (Docket No. 4).  Citing the plaintiffs' lack of a plausible theory as to why the general release did not bar its claims as well as the lack of particularity in the fraud pleadings, the

court granted that motion in full on August 8, 2018; it gave plaintiff twenty days to file an amended complaint. (Docket No. 13).

Plaintiffs then filed the First Amended Complaint ("FAC") on August 28, 2018. (Docket No. 15). Defendant moved to dismiss the First Amended Complaint. (Docket No. 16). The memorandum it submitted in support of its motion argued, among other things, that the FAC ought to be dismissed because it failed to join necessary and indispensable parties, i.e. the dealership plaintiffs. (Def.'s Mem. in Supp. of Mot. to Dismiss FAC at 4-8 (Docket No. 16).) Apparently in response to that claim, the plaintiffs filed a Second Amended Complaint brought on behalf of both Price-Simms and the dealership plaintiffs. (Docket No. 17).

## II. Constitutional and Statutory Standing

Defendant moves for dismissal of the complaint under Rule 12(b)(6). Ironically, a not insubstantial portion of its memorandum in support of that that motion is dedicated to arguing that the dealership plaintiffs, who defendant insisted were indispensable parties, now lack the standing to bring the claims alleged in the SAC. (Def.'s Mem. in Supp. of Mot. to Dismiss SAC at 4 & 15). Defendant alleges deficiencies in the dealership plaintiffs' constitutional and statutory standing to sue. The former is more appropriately adjudicated under a Rule 12(b)(1) motion for dismissal for lack of subject matter jurisdiction. See Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011)("Though lack of statutory standing requires dismissal for failure to state a claim, lack of Article III standing requires

4

dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).")(emphases in original).

The doctrine of constitutional standing is an indispensable part of the case-or-controversy requirement of Article III of the Constitution. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). As such, it is a "threshold question" in every federal case. City of S. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency, 625 F.2d 231, 233 (9th Cir. 1980). Accordingly, before turning to the merits of defendant's Rule 12(b)(6) Motion to Dismiss, the court will evaluate defendant's allegation that this court lacks the subject matter jurisdiction to adjudicate the SAC.

The irreducible constitutional minimum of Article III standing requires that the plaintiff has suffered an "injury in fact," that there is a causal connection between that injury and the defendant's challenged actions, and that a favorable decision will redress the injury. Lujan, 504 U.S. at 560-61. These elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. at 561. At the pleading stage, "general factual allegations" supporting plaintiff's claim that it has standing may suffice since, "on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. (alteration in original)(quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)). In evaluating a plaintiff's standing, the court must "accept as true all material

allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975).

Accepting as true all of plaintiffs' allegations regarding the parties' contracting history and construing the complaint in favor of the complaining party, the court finds that the dealership plaintiffs have adequately established their standing. They allege that the June 28, 2016 agreement to which the dealership plaintiffs are signatories was intended to supplant or recodify the March 25, 2016 contract to which Price Simms was a signatory. (SAC ¶ 14.) They allege that Candle3 breached that contract by failing to install HVAC and LED equipment in the manner it had agreed to. (Id. ¶ 19.) They allege that they suffered a financial injury as a direct result of this conduct. (Id. ¶ 20.) There is no apparent dispute that this alleged injury could be redressed by a favorable decision in these proceedings. At this stage in the litigation, defendant's semantic contentions regarding the parties' contracting history should not obstruct plaintiffs' ability to pursue their claims. This is particularly true since the dealership plaintiffs were apparently added to the litigation in response to defendant's allegation that they were indispensable parties. (See Mem. in Supp. of Mot. to Dismiss First Amended Complaint at 4-8 (Docket No. 16-2).)

Defendant also alleges that the dealership plaintiffs lack the statutory standing necessary to bring breach of contract, intentional or negligent misrepresentation, or false promise claims against the defendant. Specifically, defendant

6

alleges that because the dealership plaintiffs were not parties to the March 25, 2016 agreement between defendant and plaintiff Price Simms, they cannot articulate cognizable breach of contract or fraud claims under California law. (Def.'s Mem. in Supp. of Mot. to Dismiss SAC at 4 & 15). Though analytically distinct from defendant's argument regarding the dealership plaintiffs' lack of constitutional standing, these statutory standing arguments fail for a similar reason. Defendant's factual quibbles notwithstanding,[3] the court finds nothing implausible about plaintiffs' claim that the June 26, 2018 agreement was intended to supplant the March 25, 2016 agreement. To the contrary, plaintiffs' interpretation of the parties' contracting history seems more plausible than defendant's.[4] Accepting plaintiffs' allegations regarding the parties' contracting history as true, the dealership plaintiffs have statutory standing to bring breach of contract and fraud claims arising out of defendant's conduct with respect to the Agreement.

III. Motion to Dismiss

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

---

[3] Defendant argues that the June 28, 2016 agreement does not add the dealership plaintiffs as parties to the Agreement; it maintains that the June 28, 2016 agreement is a separate stand-alone contract between defendant and the dealership plaintiffs. (Def.'s Mem. in Supp. of Mot. to Dismiss SAC at 6.)

[4] Under defendant's interpretation of the parties' contracting history, Price Simms and the dealership plaintiffs independently entered into two separate, but substantively very similar, contracts with the defendant, effectively procuring, and paying for, twice the amount of services and equipment contemplated in either contract.

(2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Under this standard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 550 U.S. at 556 (2007).

### A. Breach of Contract Claim

Like the FAC and the complaint before it, the SAC incorporates the terms of a January 29, 2018 letter of understanding between defendant and Price-Simms. That agreement contains a general release of liability.[5] In its dismissal of plaintiffs' complaint, this court emphasized that plaintiffs had not set forth a plausible theory as to why the January 29, 2018 general release did not bar their claims. (Mem. And Order Re: Mot. to Dismiss (Docket No. 13).) The complaint did not, the court noted, specifically allege that the defendant's "breaches occurred after the parties signed the amendment or that plaintiffs did not know or suspect that their claims existed when they signed the amendment." (Id. at 4). This deficiency was fatal for the complaint. This court held that "[w]ithout some minimal explication of which alleged breached occurred and when,

---

[5] "A written release generally extinguishes any obligation covered by its terms, provided it has not been obtained by fraud, deception, misrepresentation, duress or undue influence." Tarpy v. Cty. of San Diego, 110 Cal. App. 4th 267, 276 (4th Dist. 2003). However, a general release does not extend to claims "that the releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the [] released party." Cal. Civ. Code § 1542.

8

the complaint is insufficient under the [Iqbal] pleading standard." (Id.)

The SAC remedies this deficiency by specifically alleging that plaintiffs did not know or suspect their claims existed until February 21, 2018. (SAC ¶ 19). Prior to that date, the complaint alleges, plaintiffs relied on a December 12, 2016 letter from Candle3 in which the defendant represented that certain LED and HVAC products had been installed and were operational. (Id.) On February 21, 2018, however, a Candle3 employee alerted plaintiffs to unspecified nonobvious problems with those same HVAC and LED products. (Id.) Because the SAC alleges, in particular terms, that plaintiffs did not know of the breach until after the January 2018 amendment, it presents a plausible theory as to why its claims are not barred by the amendment.

Defendant contends that the SAC lacks the minimum level of factual detail necessary to allege breach of contract. (Def.'s Mot. to Dismiss SAC at 8-14.) In support of this assertion, it cites case law holding that under California law, plaintiffs seeking to plead breach of contract must allege the specific provisions the defendant allegedly breached. See e.g., Young v. Facebook, Inc., 790 F. Supp. 2d 1110, 1117 (N.D. Cal 2011)(holding that plaintiffs alleging breach of a written contract under California law must "allege the specific provisions in the contract the defendant is said to have breached.").

The SAC may not be precise in its language, but its allegations that the defendant failed to complete the

9

installation of HVAC and LED components as required by its contract with plaintiffs are sufficiently specific to alert defendant to the nature of the alleged breaches and satisfy the pleading requirements. The allegation that, for example, defendant was contractually obligated to install HVAC equipment on the premises of the dealership plaintiffs and failed to do so is not a "generalized" allegation of breach.

For these reasons, the court will deny defendant's Motion to Dismiss with respect to plaintiff's breach of contract claim.

### B. Intentional Misrepresentation and False Promise Claims

Because plaintiffs' intentional misrepresentation and false promise claims "sound in fraud," they are held to a higher pleading standard than other claims. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). To survive a motion to dismiss, such claims must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b), "[a]verments of fraud must be accompanied by the 'who, what, where, when, and how' of the misconduct charged." Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). The Ninth Circuit has held that "to avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir. 1989)).

In addition to identifying the particulars of the alleged fraud, Rule 9(b) requires that a plaintiff "must 'set forth what is false or misleading about a statement, and why it is false.'" Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th Cir. 1999)).

In its dismissal of plaintiffs' complaint, the court emphasized that the pleadings lacked sufficient detail about when the allegedly false representations were made. The SAC remedies this deficiency by enumerating the specific dates on which the allegedly false representations took place.[6] To plead fraud with particularity, however, a plaintiff must "set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1106 (citations omitted). The SAC is wholly lacking in both allegations regarding the "specific content of the false representations," 356 F.3d at 1066, and explanations of why the alleged misrepresentations are false. For this reason, the SAC's misrepresentation and false promise claims still fall short of Rule 9(b)'s heightened pleading standard.

Accordingly, the court will dismiss plaintiffs' intentional misrepresentation and false promise claims with leave to amend.[7]

---

[6] For example, the SAC alleges that Richard Abbott made false representations about Candle3's work in emails on March 17, 24, 25, and 31; April 4, 8, and 19; and May 13 2016. (SAC ¶¶ 24 & 31 & 39). It also alleges Richard Abbott made false representations in a May 25, 2016 letter. (Id.)

[7] The complaint also contains a claim for negligent

11

1    IT IS THEREFORE ORDERED that defendant Candle3's Motion
2 to Dismiss Plaintiffs' Second Amended Complaint (Docket No. 21)
3 be, and hereby is, DENIED with respect to plaintiffs' first cause
4 of action for breach of contract.  IT IS FURTHER ORDERED that
5 Candle3's Motion to Dismiss Plaintiffs' Second Amended Complaint
6 be, and hereby is, GRANTED with respect to plaintiffs' second,
7 third, and fourth causes of action for intentional
8 misrepresentation, negligent misrepresentation, and false promise
9 respectively.
10    Plaintiffs are given thirty days from the date of this
11 order to file an amended complaint consistent with this order.

Dated:  November 29, 2018

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

misrepresentation. District courts in the Ninth Circuit appear to be divided on the issue whether such a claim is subject to Rule 9(b). See Petersen v. Allstate Indem. Co., 281 F.R.D. 413 (C.D. Cal. 2012)(discussing the holdings of district courts in the Ninth Circuit that Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims before holding that Rule 9(b)'s heightened pleading standard does not apply to negligent misrepresentation claims). Without expressing an opinion on that issue here, the court assumes that plaintiffs will seek to amend their negligent misrepresentation claim to cure these deficiencies as well.

12