UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| PRICE SIMMS HOLDINGS LLC, dba Price Simms Auto Group, a California Limited Liability Company; PRICE SIMMS, INC., dba Toyota of Sunnyvale; MARIN LUXURY CARS, LLC dba Land Rover Marin; PRICE-SIMMS PA, LLC dba McLaren San Francisco and Volvo Palo Alto; PRICE CARS SR, LLC dba Toyota Marin and Scion Marin (a/k/a Toyota & Scion Marin and Toyota Marin Used Cars); PRICE-SIMMS FAIRFIELD dba Mercedes Benz of Fairfield; and PRICE-SIMMS FORD LLC dba Ford Lincoln Fairfield,<br><br>       Plaintiffs,<br><br>  v.<br><br>CANDLE3, LLC, a Colorado Limited Liability Company,<br><br>       Defendant. | No. 2:18-cv-1851 WBS KJN<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS COUNTERCOMPLAINT |

----oo0oo----

       Plaintiff Price Simms Holding LLC, dba Price Simms Auto Group ("Price Simms") is a California limited liability company

1

that owns and operates automobile dealerships. The following plaintiffs are automobile dealerships and/or service centers affiliated with Price Simms: (1) Price Simms, Inc., dba Toyota of Sunnyvale; (2) Marin Luxury Cars, LLC dba Land Rover Marin; (3) Price-Simms PA, LLC dba McLaren San Francisco and Volvo Palo Alto; (4) Price Cars SR, LLC dba Toyota Marin and Scion Marin (a/k/a Toyota & Scion Marin and Toyota Marin Used Cars); (5) Price-Simms Fairfield dba Mercedes Benz of Fairfield; and (6) Price-Simms Ford LLC dba Ford Lincoln Fairfield ("the dealerships").

Defendant and counterclaimant Candle3 sells and installs various "clean energy technology" products that reduce a building's energy consumption. (Id. ¶ 14.) Plaintiffs, Price Simms and the dealerships, initiated this action against defendant Candle3 LLC ("Candle3") asserting various claims arising out of their purchase of electrical consulting and fixtures from the defendant. (See Third Am. Compl. (Docket No. 56).)

With its answer to plaintiffs' Third Amended Complaint, Candle3 LLC brought various counterclaims against all plaintiffs. (Countercompl. (Docket No. 59-1).) Several of those claims were also alleged against two third-party defendants, Adam Simms and Chris Firle, both executives at Price Simms.

Presently before the court is Price Simms, Adam Simms, and Chris Firle's Motion to Dismiss the countercomplaint's fourteenth counterclaim. (Docket No. 67.)

I. Factual and Procedural Background

On March 25, 2016, Price Simms and Candle3 entered into

a written contract by which Candle3 was to perform "clean energy" construction work at multiple Price Simms affiliated dealerships. (Id. ¶ 16.) Then, on or about June 28, 2016, Candle3 entered into eight separate contracts with the dealerships ("the June 28 contracts"). (Id. ¶ 17.) Candle3 alleges that throughout 2017, "Price Simms management" made "numerous and excessive and unreasonable changes to the scopes of work of the various individual contracts." (Id. ¶ 23.) Candle3 further alleges that on March 29, 2018, Chris Firle, Price Simms Holdings' Vice President of Finance, told Candle3 that he "wished to withdraw from the agreement on behalf of his employer." (Id. ¶ 121.) Then, on April 11, 2018, the countercomplaint alleges, Chris Firle sent Candle3 a letter terminating the "Agreement." The language of the termination letter allegedly made it clear that it "applied to all Candle3 operations involving Price Simms entities." (Id.) Candle3 alleges it was harmed by Firle's actions because they "prevented [Candle3] from completing performance and collecting the third and final payments on the individual contracts[.]" (Id. ¶ 123.)

II. Legal Standard

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Under this standard, "a well-pleaded complaint may proceed

even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 550 U.S. at 556 (2007).

III. Tortious Interference with Contract

Counterclaimant Candle3's fourteenth counterclaim alleges that Price Simms Holdings, Adam Simms, and Chris Firle tortuously interfered with Candle3's June 28 contracts with the dealership plaintiffs ("the June 28 contracts"). (Countercompl. ¶¶ 117-126.)

In order to state a claim for tortious interference with contractual relations, a plaintiff must show:

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990).

Under California law, it is settled that "corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." Mintz v. Blue Cross of Cal., 172 Cal. App. 4th 1594, 1604 (2d Dist. 2009)(quoting Shoemaker v. Myers, 52 Cal. 3d 1, 24 (1990).) In Mintz, the holder of a California Public Employees' Retirement System ("CalPERS") health insurance policy brought a tortious interference claim against the policy's administrator, Blue Cross. Citing the fact that CalPERS had vested Blue Cross with the power to act as its agent, the court sustained Blue Cross's demurrer and held that "the representative of a contracting party may not be held liable for the tort of

interfering with its principal's contract[.]" Mintz, 172 Cal. App. 4th at 1607. Crucially, merely possessing an "economic interest or connection" to a contract is insufficient to protect a defendant from liability for tortious interference with that contract. Woods v. Fox Broad. Sub., Inc., 129 Cal. App. 4th 344 (2d Dist. 2005); see also Culcal Stylco, Inc. v. Vornado, Inc., 26 Cal. App. 3d 879, 883 (2d Dist. 1972).

Citing Mintz, 172 Cal. App. 4th 1594, Adam Simms, Chris Firle, and Price Simms argue that because the dealerships vested Price Simms, Adam Simms, and Chris Firle with the power to administer the June 28 contracts, Price Simms, Adam Simms, and Chris Firle cannot be held liable for interfering with those contracts. (Mot. to Dismiss at 5-8.) In its opposition, Candle3 counters that Price Simms, Adam Simms, and Chris Firle "are not agents, officers, or managers of any of the six (6) actual contracting parties [i.e., the dealerships]" and, therefore, may be held liable for interfering with the June 28 contracts between Candle3 and the dealerships. (Opp'n to Mot. to Dismiss at 5 (Docket No. 70).) In making this argument, Candle3 relies on case law showing that even parties with legitimate economic or other interests in a contract can be held liable for tortious interference with it. See, e.g., Popescu v. Apple Inc., 1 Cal. App. 5th 39 (6th Dist. 2016); Asahi Kasei Pharma Corp. v. Actelion Ltd., 222 Cal. App. 4th 945, 961 (1st Dist. 2013), as modified on denial of reh'g (Jan. 16, 2014).

The Opposition's contention that Price Simms, Adam Simms, and Chris Firle are not the dealerships' agents is contradicted by the countercomplaint's numerous factual

5

allegations about the involvement of Price Simms, Adam Simms, and Chris Firle, with the formation, performance, and termination of the June 28 contracts. It describes decisions made by Price Simms management with respect to the June 28 contract with Marin Luxury Cars as "owner-made decisions" (Countercompl. ¶ 34); it describes how "Price Simms management" paused Candle3's work at Toyota Marin in early 2017 (id. ¶ 64); it alleges that Adam Simms and Chris Firle "breached the eight separate contracts as individuals" (id. ¶ 98); it alleges that all of its contracts with the dealerships were signed by Adam Simms (id. ¶ 119); and that Candle3 stopped performance on the June 28 contracts after Chris Firle told them "he wished to withdraw from the agreement on behalf of his employer" (id. ¶ 121). Moreover, paragraph 31 of Candle3's countercomplaint describes Adam Simms, Price Simms, Chris Firle, and the dealerships as "a single whole." Specifically, it states:

> [t]he personalities of the business and individual [c]ounter [d]efendants are not and were not separate, but a single whole, which facts render it inequitable to direct the acts as alleged as solely those of the business entities alone, when in fact all such acts and omissions as alleged herein are and have been instigated and controlled directly and solely by the individual [c]ounter [d]efendants, or one of all of them in all material aspects, primarily or in material part for his and/or her own personal use and benefit.

(Countercompl. ¶ 31.)

The factual allegations of the countercomplaint render the Opposition's contention that Price Simms, Adam Simms, and Chris Firle did not represent the dealerships in their dealings with Candle3 plainly untenable. If Price Simms was an outsider

6

to Candle3's contracts with the dealerships, why did Price Simms pay Candle3 amounts due under the June 28 contracts (id. ¶¶ 19-20)? If Adam Simms was not an agent or representative of the dealerships, why is he the one who signed all of the June 28 contracts? If Chris Firle was not an agent of the dealerships vis-à-vis the June 28 contracts, why did Candle3 stop performance on those contracts when Firle asked them to? How could Adam Simms and Chris Firle "breach" contracts they are not party to?

Collectively, the allegations in the countercomplaint make Candle3's fourteenth claim for tortious interference highly implausible. The countercomplaint's allegations lead to the inescapable conclusion that Price Simms, Adam Simms, and Chris Firle, were the agents of the dealerships with whom Candle3 contracted on June 28, 2016. As the dealerships' agents and representatives, these parties cannot be held liable for tortious interference with the dealerships' contracts. See Mintz, 172 Cal. App. 4th at 1598 ("the representative of a contracting party . . . may not be held liable for the tort of interfering with its principal's contract"). Thus, the countercomplaint's Fourteenth Cause of Action fails to state a claim upon which relief can be granted.

Accordingly, the court will grant the Motion to Dismiss as to this count.

IV. Request to Strike Claim for Exemplary Damages

Price Simms, Adam Simms, and Chris Firle also ask the court to strike the claim for exemplary damages as to Adam Simms and Chris Firle from the countercomplaint's prayer for relief. (Mot. to Dismiss at 9.) They argue that Candle3's claim for

exemplary damages as to Adam Simms and Chris Firle is "contingent" on the tortious interference with contract claim and that, therefore, if the former is dismissed, the latter should be stricken. (Id.)

Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Ninth Circuit has made clear, however, that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974-75 (9th Cir. 2010). Following Whittlestone, courts in this district have declined to strike prayers for unavailable forms of relief. See, e.g., Estate of Prasad ex rel. Prasad v. Cty. of Sutter, 958 F. Supp. 2d 1101, 1128 (E.D. Cal. 2013) (Nunley, J.) ("Plaintiffs' prayer for punitive damages satisfies 'none of the five categories' of material that may be stricken under Rule 12(f)." (alterations omitted)).

In Whittlestone's wake, several courts in this district have construed motions to strike prayers for forms of relief that are unavailable as a matter of law as "improperly labeled" motions to dismiss. Johnson v. Napa Valley Wine Train, Inc., No. 15-CV-04515 TEH, 2016 WL 493229, at *13 (N.D. Cal. Feb. 9, 2016). See also MacLellan v. Cty. of Alameda, No. C 12-5795 MMC, 2013 WL 163732, at *1 (N.D. Cal. Jan. 15, 2013) (dismissing claims and prayer for punitive damages that were not available under California law even though defendant moved to strike them); Linares v. CitiMortgage, Inc., No. C-14-3435 EMC, 2015 WL

2088705, at *8 (N.D. Cal. May 5, 2015) (treating motion to strike request for punitive damages that are unavailable as a matter of law as a motion to dismiss). The court adopts this approach.[1]

Following the dismissal of the countercomplaint's fourteenth claim, the only remaining claims against Adam Simms and Chris Firle will be for breach of contract or in quantum meruit.[2] "Under California law, punitive damages are not available for breaches of contract no matter how gross or willful." Tibbs v. Great Am. Ins. Co., 755 F.2d 1370, 1375 (9th Cir. 1985) Moreover, "[a] recovery in quantum meruit cannot include punitive damages." Alvarenga v. Carlson Wagonlit Travel, Inc., No. 1:15-CV-01560 AWI BAM, 2016 WL 466132, at *3 (E.D. Cal. Feb. 8, 2016). Given that punitive damages are not available for breach of contract or as part of a recovery in quantum meruit, punitive damages as to Adam Simms and Chris Firle are unavailable as a matter of law. Accordingly, the court will dismiss Candle3's claim for punitive damages as to Adam Simms and Chris

---

[1] In its opposition, Candle3 correctly notes that its prayer for punitive damages encompasses not only Count 14, but also Count 13, Candle3's intentional misrepresentation claim against defendant Price Simms. (Opp'n to Mot. to Dismiss at 9.) Unlike the header text of Count 14, which is explicitly alleged against Adam Simms and Chris Firle alongside Price Simms, the header text of Count 13 names neither Adam Simms or Chris Firle. Moreover, though Adam Simms and Chris Firle are mentioned in paragraphs 110 and 116 of Count 13, Count 13's substantive allegations concern Price Simms exclusively. Given these facts, Count 13 is not alleged against Adam Simms and Chris Firle, and the court addresses the issue of whether to dismiss the request for punitive damages as to Adam Simms and Chris Firle without reaching the question of whether Candle3 has stated a claim for punitive damages with respect to Count 13.

[2] The countercomplaint's tenth, and twelfth claims assert causes of action in quantum meruit against Adam Simms. The countercomplaint's eleventh claim asserts a cause of action in quantum meruit against Chris Firle.

9

Firle.

IT IS THEREFORE ORDERED that Price Simms, Adam Simms, and Chris Firle's Motion to Dismiss Candle3's countercomplaint (Docket No. 67) be, and hereby is, GRANTED. Candle3's Fourteenth counterclaim for tortious interference with a contract and its prayer is DISMISSED WITH PREJUDICE. Counterclaims one through thirteen remain pending before the court. Candle3's prayer for punitive damages as against Adam Simms and Chris Firle is DISMISSED.

Dated: May 8, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE