1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PRICE SIMMS HOLDINGS, LLC, et al.,        No. 2:18-cv-1851-WBS-KJN

12                 Plaintiffs,                 FINDINGS AND RECOMMENDATIONS ON
                                               PLAINTIFFS' MOTION FOR DEFAULT
13         v.                                  JUDGMENT AND MOTION TO DISMISS

14   CANDLE3, LLC,                             (ECF No. 130)

15                 Defendant.

16

17         Presently pending before the court is plaintiffs' motion for default judgment against

18   defendant Candle3, and motion to dismiss Candle3's counterclaims for lack of prosecution.[1]

19   (ECF No. 130.)  Candle3 has been absent from this action since early 2020, and the Clerk of the

20   Court entered default against Candle3 in July of 2020.  (See ECF Nos. 121, 122.)

21         The undersigned recommends:

22   I.    Plaintiffs' motion for default judgment on the breach-of-contract claim be
           GRANTED IN FULL, and final judgment in the amount of $3,340,256 be
23         awarded; and

24   II.   Plaintiffs' motion to dismiss be GRANTED, and Candle3's counterclaims be
           dismissed for failure to prosecute.
25
     ///
26
     ///
27   _____

28   [1] This motion is referred to the undersigned by 28 U.S.C. Section 636(b)(1)(B) and Local Rules
     302(c)(19) and (21) for the entry of findings and recommendations.  See Local Rule 304.

                                                  1

1    **BACKGROUND**

2        Price Simms Holding LLC, dba Price Simms Auto Group ("Price Simms") is a California

3    limited liability company that owns and operates automobile dealerships, including:  (1) Marin

4    Luxury Cars, LLC dba Land Rover Marin; (2) Price-Simms PA, LLC dba McLaren San

5    Francisco and Volvo Palo Alto; (3) Price Simms, Inc., dba Toyota of Sunnyvale (4) Price Cars

6    SR, LLC dba Toyota Marin and Scion Marin; (5) Price-Simms Fairfield dba Mercedes Benz of

7    Fairfield; and (6) Price-Simms Ford LLC dba Ford Lincoln Fairfield (collectively the

8    "Dealerships").  (Id. at ¶¶ 1-8.)  Adam Simms and Chris Firle are executives at Price Simms.

9    (ECF No. 59 at ¶¶ 9-10.)  Candle3 is a Colorado corporation that sells and installs various "clean

10   energy technology" products that reduce a building's energy consumption.  (Id. at ¶ 14.)

11       In March of 2016, Price Simms and Candle3 entered into a written agreement by which

12   Candle3 would perform "clean energy" construction at the Dealerships.  (ECF No. 53 at ¶ 12; see

13   also id. at Exhibit 1.)  The Agreement was based on explicit representations by Candle3 that "(a)

14   the work would result in the specified energy savings; (b) Candle3 would perform the work in a

15   good, workmanlike manner consistent with specifications; and (c) prior to completion, Candle3

16   would use funds paid by plaintiffs to Candle3 only to purchase material and to perform work for

17   plaintiffs' project."  (Id.)  This Agreement was amended multiple times to detail the scope of the

18   work and the obligations of Price Simms and the Dealerships.  (Id. at 13-15; see also id. at

19   Exhibits 2 & 3.)  In a January 29, 2018 letter of understanding, Candle3 agreed to refund certain

20   payments, and the parties otherwise reaffirmed that Candle3 would complete all work—including

21   that "the solar systems will be fully operational [and compliant with any and all PG&E

22   connection requirements.]"  (Id. at Ex. 3.)  Each party also agreed to "mutually release the other

23   from any and all claims.  (Id.)

24       In April of 2018, plaintiffs terminated the Agreement, asserting Candle3 "[f]ailed to

25   perform work consistent with specifications and failed to complete work in a timely manner."

26   (Id. at ¶ 16.)  Plaintiffs hired other companies to complete the LED, HVAC, and Solar

27   installations, and discovered Candle3 had not completed a substantial portion of the work it said it

28   had done.  (See ECF No. 131.)

1    Plaintiffs filed suit in California Superior Court, and Candle3 removed to this court under

2    diversity jurisdiction.  (ECF No. 1.)  After multiple rounds of amendments to the pleadings,

3    plaintiffs' third amended complaint ("3AC") asserted a claim for breach of contract.[2]  (See ECF

4    Nos. 56, 59-1.)  The 3AC states Candle3 breached the Agreement by "(a) failing to perform work

5    consistent with specifications; (b) failing to complete work in a timely manner; and (c) failing to

6    satisfy contractual milestones that were conditions precedent to additional payments, while

7    demanding additional payments from [p]laintiffs without completing the work for which Candle3

8    had already been paid."  (ECF No. 56 at ¶ 19.)  The breaches allegedly occurred both prior to and

9    after the parties' January 2018 letter, and the breaches prior to the letter went undiscovered due to

10   Candle3's representations that the work had been completed (instances which plaintiffs detailed

11   at length in the 3AC).  (Id. at ¶ 19-20.)  The 3AC states because of Candle3's non-performance,

12   plaintiffs were damaged.  (Id.)  Candle3 denied liability.  (ECF No. 59.)

13   Candle3 asserted counterclaims for breach of contract against the Dealerships; quantum

14   meruit against the Dealerships, Price Simms, Chris Firle, and Adam Simms; intentional

15   misrepresentation against Price Simms; and tortious interference against Simms and Firle.  (ECF

16   No. 59-1.)  The district court dismissed the tortious-interference claim, and plaintiffs/counter-

17   defendants denied liability on the thirteen other claims.  (ECF Nos. 76, 77.)

18   After the attorneys for Candle3 withdrew in early 2020, Candle3 ceased participating in

19   this litigation, and the Clerk entered default on plaintiffs' claims.  (See ECF Nos. 93-122.)

20   Plaintiffs now move for default judgment and dismissal of the counterclaims.  (ECF No. 130.)

21   **DISCUSSION**

22   Plaintiffs argue:  (I) default judgment should issue against Candle3 on the breach-of-

23   contract claim; and (II) Candle3's counterclaims should be dismissed with prejudice for failure to

24   prosecute.  (ECF No. 131.)  Candle3 filed no opposition to this motion.

---

25   [2] The 3AC also asserts three fraud-based claims, that in entering into the Agreement, plaintiffs
26   reasonably relied on multiple, false, and specific representations by Candle3's agents in early
     2016, and did not learn of the representations' falsities until February of 2018.  (See ECF No. 56.)
27   Candle3 also denied liability on these claims.  (ECF No. 59.)  However, plaintiffs have not moved
     for default judgment on these claims, so the undersigned focuses on the allegations tied to the
28   claim for breach of contract.

1      **I.**      **Motion for Default Judgment on Plaintiffs' Breach-of-Contract Claim**

2           <u>Legal Standard</u>

3           The procedure for obtaining a default judgment under Federal Rules of Civil Procedure

4      55 is a two-step process.  First, if a judgment for affirmative relief is sought against a party, and

5      that party fails to plead or otherwise defend against the action, default may be entered against that

6      party.  <u>See</u> Rule 55(a).  Generally, once default is entered, all well-pleaded factual allegations in

7      the operative complaint are taken as true.  <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899, 906

8      (9th Cir. 2002).  However, the entry of default does not automatically entitle the plaintiff to a

9      court-ordered judgment.  <u>See</u> <u>Draper v. Coombs</u>, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead,

10     at the second step, the court may grant or deny an application for default judgment in its

11     discretion.  <u>See</u> <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471 (9th Cir. 1986).  In making this

12     determination, the court is to consider the following factors:

13          1.  the possibility of prejudice to the plaintiff;
            2.  the merits of plaintiffs' substantive claim and the sufficiency of the complaint;
14          3.  the sum of money at stake in the action;
            4.  the possibility of a dispute concerning material facts;
15          5.  whether the default was due to excusable neglect; and
            6.  the strong policy underlying the Federal Rules of Civil Procedure favoring
16              decisions on the merits.

17     <u>Id.</u> at 1471-72.  Default judgments are ordinarily disfavored.  <u>Id.</u> at 1472.

18          Though all well-pleaded allegations in the complaint are admitted by the entry of default,

19     "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not

20     established by default."  <u>Cripps v. Life Ins. Co.</u>, 980 F.2d 1261, 1267 (9th Cir. 1992).  Further, an

21     entry of default typically does not establish damages.  <u>Draper</u>, 285 F.3d at 906.  However, the

22     burden on damages at step two is relatively lenient, as "plaintiff need prove only that the

23     compensation sought relates to the damages that naturally flow from the injuries pled."  <u>Philip</u>

24     <u>Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  Under

25     Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or

26     exceed in amount, what is demanded in the pleadings."  The court may hold a hearing to conduct

27     an accounting, establish damages, establish the truth of any allegation, or investigate another

28     matter.  Rule 55(b)(2).

4

**Analysis**

The undersigned finds that the weight of the <u>Eitel</u> factors entitles plaintiffs to a default judgment against Candle3 on the breach-of-contract claim.

    1.  <u>Plaintiffs are prejudiced by Candle3's desertion of this lawsuit.</u>

The first <u>Eitel</u> factor considers whether plaintiffs would suffer prejudice if default judgment is not entered.  <u>See</u> <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (noting that prejudice to a plaintiff weighs in favor of a default judgment).

As detailed in the undersigned's order directing the Clerk of the Court to enter default, the parties had been participating in motion practice and had begun exchanging discovery prior to 2020.  However, in early 2020, the district court considered a motion by Candle3's then-counsel to withdraw.  (<u>See</u> ECF No. 121.)  A representative from Candle3 informed the court the company was in the process of obtaining new counsel.  (<u>See</u> <u>Id.</u>)  Based on those representations, the district court allowed counsel to withdraw and ordered new counsel to enter an appearance.  (<u>See</u> ECF Nos. 104-10.)  However, no new counsel appeared, leaving Candle3 unrepresented.  <u>See</u> <u>Rowland v. California Men's Colony</u>, 506 U.S. 194 (1993) ("A corporation may appear in federal court only through licensed counsel.").  Further, all notices mailed to Candle3 at its business addresses were returned as unserved.  (<u>See</u> Docket Entries April 29-July 23, 2020.)

Simply, Candle3's disappearance from this litigation has left plaintiffs without any other recourse.  Accordingly, the first <u>Eitel</u> factors favors the entry of default judgment.

    2.  <u>Plaintiffs' breach-of-contract claim appears meritorious and sufficiently pleaded.</u>

The second and third <u>Eitel</u> factors (the merits of the substantive claims and the sufficiency of the complaint) are often considered in tandem, due to the relatedness of the two inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim, and whether these averments and the evidence support the relief sought.  <u>See</u> <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978).

Here, plaintiffs seek a default judgment on the breach-of-contract claim.  (<u>See</u> ECF No. 56 at 4-5.)  The contract contains no choice of law provision, and so is analyzed under California law.  <u>See</u> <u>Shannon-Vail Five Inc. v. Bunch</u>, 270 F.3d 1207, 1210 (9th Cir. 2001); Cal. Civ. Code

§ 1646 ("A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.").  The basic elements of a breach-of-contract claim under California law are:  (i) the existence of a contract, (ii) a plaintiff's performance or excuse for non-performance, (iii) defendant's breach, and (iv) damage to plaintiff therefrom."  Wall Street Network, Ltd. v. New York Times, Co., 164 Cal. App. 4th 171, 178 (2008).

Plaintiffs attached to the 3AC the signed written contract and all amendments, and allege they had "performed all conditions, covenants, and obligations owed" thereunder.  (See ECF No. 56 at 3-4.)  The 3AC details multiple instances where Candle3 allegedly breached the Agreement by failing to complete the work under the agreed-upon specifications in a timely manner, all while demanding additional, unwarranted payments.  (See Id. at ¶ 19.)  The district court was initially concerned that the January 2018 letter foreclosed any breach-of-contract claim because it contained a general release of liability.[3]  (See ECF No. 52 at 8.)  However, plaintiffs amended their complaint and stated specific facts that plausibly indicated they "did not know or suspect their claims existed" until after the January letter was signed.  (See Id.)  In an order on Candle3's motion to dismiss the 2AC, the district court found plaintiffs' allegations were "sufficiently specific to alert the defendant to the nature of the alleged breaches and satisfy the pleading requirements."  (ECF No. 52 at 9-10.)  Plaintiffs' breach-of-contract allegations in the 3AC are substantially similar to those in the 2AC, and the undersigned's analysis does not differ from the district court's on this claim.

Additionally, the documents and affidavits submitted alongside plaintiffs' motion for default judgment support the breach-of-contract claim.  For example:

    i.    Plaintiffs submitted the base contract and 2018 letter of understanding—alongside both

---

[3] As cited by the district court: "A written release generally extinguishes any obligation covered by its terms, provided it has not been obtained by fraud, deception, misrepresentation, duress or undue influence."  Tarpy v. Cty. of San Diego, 110 Cal. App. 4th 267, 276 (2003).  However, a general release does not extend to claims "that the releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the [] released party."  Cal. Civ. Code § 1542.

the 3AC and their default judgment motion.  (See ECF No. 56 at Exs. 1-3; see also ECF No. 134 at Ex. D (June 28, 2016 agreement), Ex. G (January 29, 2018 "Letter of Understanding").)  Under the initial agreement, plaintiffs would owe a total of $4,861,758 for the completion of all work at the various dealerships.  (Parhizkar decl. at Ex. D.) Payments were to be made in three installments: 45% due at inception, 30% upon the installation and operation of the LED and HVAC products, and the remaining 25% upon completion and installation and operation of all Solar products.  (See id.)  The parties agreed to three change orders, which increased the scope of work at three of the Dealerships.  (Halm decl. at ¶ 14; Parhizkar decl. at Ex. F.)  The change orders increased the cost by $1,720,716 and utilized same installment percentages.  (See id.)

ii.    Plaintiffs performed their end of the Agreement by paying to Candle3 $2,187,791 for the initial down-payment.[4]  (See Parhizkar decl. at Exs. C (wire transfer confirmation), G (confirming payment of the initial deposit to Candle3).)  In February of 2017, plaintiffs paid Candle3 an additional $2,232,849, composed of $774,322 for their 45% initial obligation under the change orders and $1,458,527 for "work [that] has been 100% completed" on the Agreement.  (See id.; see also id. at Ex. K.)

iii.    Candle3 breached the Agreement in multiple respects, including by failing to "perform any [HVAC] services," by only partially completing the LED installations and allowing them to fall "substantially behind schedule," and by "completely abandon[ing]" the solar installations.  (Suba decl. at ¶¶ 5-8.)  Further, despite the parties' agreement in the January 2018 to "release the other from any and all claims" (Parhizkar decl. at Ex. G), plaintiffs adequately demonstrated they were unaware of Candle3's breaches prior to the January 2018 letter.  (See id. at ¶ 8 (asserting that when plaintiffs' new contractor reviewed the projects' status in February of 2018, "many of the deliverables that Candle3 had certified to Price-Simms that it had completed had in fact not been completed."); cf. also Parhizkar

---

[4] This payment was part of a $2,463,664 transfer in August of 2016, which also included payment for work to be performed on a separate property.  However, the parties agreed to cancel work on that property, and Candle3 refunded $275,873 to Price Simms.  (See Parhizkar decl. at Ex. G.)

1  decl. at Exs. M-QQ (Candle3's updates between March of 2017 and March of 2018) and

2  Ganjam decl. at Exs. A-B (Candle3 updates in January 2018); with Suba decl. at ¶¶ 5-12;

3  Parhizkar decl. at Exs. RR-LLLL (invoices and agreements from various contractors

4  brought on to complete the work beginning February of 2018).

5    iv.    As described in subsection 3 below, Candle3's breach damaged plaintiffs.

6  Taking the 3AC's well-pleaded allegations as true, the undersigned finds plaintiffs have

7  adequately pleaded a breach-of-contract claim under California law, and this claim appears

8  meritorious as per the supporting documents.  Wall Street Network, 164 Cal. App. 4th at 178.

9         3.  The amount of damages is proportional to plaintiffs' harm.

10        Next, the court considers "the amount of money at stake in relation to the seriousness of

11  [d]efendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA,

12  Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

13        While the $3,340,256 in damages sought by plaintiffs is a substantial sum, it is directly

14  proportional to the amount of loss incurred.  After Candle3 failed to perform as promised,

15  plaintiffs were required to hire other companies to complete the work; this resulted not only in

16  higher project costs, but also extra expenses from higher energy costs and the accrual of pre-

17  judgment interest.  (See ECF No. 131-1.)  As detailed by plaintiffs' damages expert:

18   -   Plaintiffs' mitigation efforts required Price Simms spend an additional
19       $2,355,652 to complete the work promised by Candle3.  (Halm decl. at ¶ 44.)
         This figure generally derives from the following:
20           o  In total, Price Simms paid $4,396,514 to Candle3.  (See Halm decl. at
21              ¶ 18; see also Parhizkar decl. at Exs. B (7/7/2016 Invoice), C (Wire
                transfer receipts), G (January 2018 Letter), and H (refund check).)
22              However, Candle3 completed only some of the LED installation, did
                not perform any HVAC work, and had ordered but not installed solar
23              panels for some dealerships and failed to perform any solar work at
                other dealerships.  (See Halm decl. at ¶¶ 20-40; Suba decl. at ¶¶ 5-8.)
24           o  Plaintiffs' new project manager Steven Suba was paid both a monthly
25              retainer and for additional hours worked.  (Suba decl. at ¶12; Halm
                decl. at Schedule 6; Parhizkar decl. at Ex. ZZZ.)  Plaintiffs also hired
26              Larry Scorza (LED) and Cool Earth (solar) to complete the LED and
                solar installs, as well as "fix material defects with the installations
27              performed by Candle3."  (Suba decl. ¶¶ 13-23; Parhizkar decl. at Exs.
                RR-YYY and ZZZ-LLLL; Halm decl. at Schedules 3.1, 5.1, and 5.2.)

28

o  Plaintiffs' damages expert accounted for various change orders (increase/reduction in work/cancellation of orders) and splitting of certain expenses between plaintiffs and Candle3.  He also noted times where Cool Earth altered scope of the work to fit the needs of the site—opining that the value of the Candle3 contract would have been different under the actually-completed work.  (See, Halm decl. at ¶¶ 23, 30, and Schedule 5.3.)

-  Further, the delay in completion of the work caused plaintiffs to incur higher utility costs of $295,652.  (Halm decl. at ¶ 48; see also id. at Schedules 3.2 and 3.3.)

-  Finally, prejudgment interest was calculated at 10%, running from the date of contract termination (April 11, 2018) through the date of plaintiffs' motion (February 11, 2021), resulting in an amount of $689,398.  (Halm decl. at ¶ 49; see also id. at Schedule 2.1 (calculation of pre-judgment interest as of December 31, 2020).)

Based on the affidavits and documents submitted, the undersigned finds the requested damages are reasonable, proportional to the well-pled allegations, and do not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  Rule 54(c); Coach Servs. v. YNM, Inc., 2011 U.S. Dist. LEXIS 52482, at *8-9 (C.D. Cal. May 6, 2011) (awarding default judgment where "[t]he amount of money sought by plaintiff is consistent with the allegations in the [c]omplaint and the claim asserted."); Cal. Civ. Code § 3287(b) (allowing for prejudgment interest in a breach of contract claim "where the claim was unliquidated . . . as the court may, in its discretion, fix . . . ."); Cal. Civ. Code § 3289(b) (stating that if the contract does not stipulate a legal rate of interest, then the interest rate is "10 percent per annum after a breach.");see also Affinity Group, Inc. v. Balser Wealth Management, LLC, 2007 WL 1111239 (S.D. Cal. 2007) (noting that a plaintiff's burden in proving up damages is relatively lenient—it must show the compensation sought relates to the damages which naturally flow from the injuries alleged).  Accordingly, this factor weighs in favor of entry of default judgment for the amount sought.

4.   The material facts are not in dispute.

The court may assume the truth of well-pleaded facts in the complaint, to preclude the likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500;

1   PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Plaintiffs provided the court with well-pleaded

2   allegations and documentation supporting the claim, including signed copies of the relevant

3   agreements, invoices, signed affidavits, and calculation of damages under the contract.  (See ECF

4   Nos. 131-34.)  The undersigned finds this factor favors the entry of a default judgment.

5           5.   The court sees no excusable neglect on Candle3's part.

6           The undersigned finds that the default was not the result of excusable neglect.  See Pepsi

7   Co, Inc., 238 F. Supp. 2d at 1177.  Candle3 had ample notice of plaintiffs' claims and in fact

8   contested the merits of the breach-of-contract claim for the first year of the litigation.  However,

9   after Candle3's counsel was allowed to withdraw, Candle3 has been inexplicably absent from the

10   litigation.  (See ECF No. 121.)  Accordingly, there is no indication that its default resulted from

11   excusable neglect, and so this factor favors the entry of a default judgment.

12           6.   The policy favoring disposition on the merits is outweighed by other factors.

13           "Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782

14   F.2d at 1472.  However, this policy, standing alone, is not dispositive, especially where a

15   defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see

16   also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Here,

17   the undersigned is cognizant of the policy in favor of decisions on the merit, and that policy

18   weighs against the entry of default.  However, the policy does not, by itself, preclude the entry of

19   default judgment.  PepsiCo, Inc., 238 F. Supp. 2d at 1177.

20           **Conclusion**

21           Pursuant to the above analysis, the Eitel factors weigh in favor of default judgment against

22   Candle3.  Further, the principal amount of damages corresponds to the invoices and declarations

23   submitted, and so the undersigned recommends that plaintiffs be awarded final judgment in the

24   amount of $3,340,256, inclusive of pre-judgment interest.[5]

25   ///

26
27   [5] The parties allowed for an award of attorneys' fees and costs in the Agreement.  (See ECF No.
     56 at Ex. 2.)  Plaintiffs indicate they will submit a fees request after default judgment is entered.
     Plaintiffs should submit their request for attorneys' fees and costs within 14 days of these findings
28   and recommendations, so that the district court can resolve the issues in tandem.

10

1     **II.     Motion to Dismiss Candle3's Counterclaims for Failure to Prosecute**

2            <u>**Legal Standard**</u>

3            Eastern District Local Rule 183(a) provides, in part, that unrepresented parties are still

4     "bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable

5     law.  All obligations placed on 'counsel' by these Rules apply to individuals appearing in propria

6     persona.  Failure to comply therewith may be ground for dismissal, judgment by default, or any

7     other sanction appropriate under these Rules."  A district court may impose sanctions, including

8     involuntary dismissal of a plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b),

9     where that plaintiff fails to prosecute the case or fails to comply with the court's orders, the

10    Federal Rules of Civil Procedure, or the court's local rules.  See <u>Chambers v. NASCO, Inc.</u>, 501

11    U.S. 32, 44 (1991) (recognizing that a court "may act sua sponte to dismiss a suit for failure to

12    prosecute"); <u>Hells Canyon Preservation Council v. U.S. Forest Serv.</u>, 403 F.3d 683, 689 (9th Cir.

13    2005) (stating that courts may dismiss an action pursuant to Federal Rule of Civil Procedure 41(b)

14    for a plaintiff's failure to prosecute or comply with the rules of civil procedure or the court's

15    orders); <u>Ghazali v. Moran</u>, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam) ("Failure to follow a

16    district court's local rules is a proper ground for dismissal."); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258,

17    1260 (9th Cir. 1992) ("[Under Rule 41(b)], the district court may dismiss an action for failure to

18    comply with any order of the court."); <u>Thompson v. Housing Auth. of City of L.A.</u>, 782 F.2d 829,

19    831 (9th Cir. 1986) (per curiam) (stating that district courts have inherent power to control their

20    dockets and may impose sanctions including dismissal or default).

21           A court must weigh five factors in determining whether to dismiss a case for failure to

22    prosecute, failure to comply with a court order, or failure to comply with a district court's local

23    rules.  <u>See, e.g.</u>, <u>Ferdik</u>, 963 F.2d at 1260.  Specifically, the court must consider:

24                      (1) the public's interest in expeditious resolution of litigation; (2) the
                        court's need to manage its docket; (3) the risk of prejudice to the
25                      defendants; (4) the public policy favoring disposition of cases on
                        their merits; and (5) the availability of less drastic alternatives.
26

27    <u>Id.</u> at 1260-61; <u>accord</u> <u>Pagtalunan v. Galaza</u>, 291 F.3d 639, 642-43 (9th Cir. 2002).

28    ///

1   **Analysis**

2          Here, the first two factors weigh in favor of dismissal because this case has already been

3   delayed by Candle3's failure to take the steps necessary to move its counterclaims forward.  The

4   third factor also slightly favors dismissal because defendants have been deprived of an

5   opportunity to conduct discovery and prepare their defense.  With the passage of time, witnesses'

6   memories fade and evidence becomes stale.  The fifth factor also favors dismissal, because the

7   court has already attempted less drastic alternatives.  Specifically, the court attempted for many

8   months in 2020 to provide Candle3 with an opportunity to inform the court whether it would be

9   retaining new counsel—prior to the entry of default.  (See ECF Nos. 104-17.)  Despite these

10  efforts, Candle3 did not respond to any of the court's notices, and most were returned as

11  undeliverable.  See L.R. 182(f) (imputing a duty on parties to notify the court and parties of any

12  change of address).  Simply, Candle3 has been absent from the litigation since its counsel

13  withdrew in February of 2020, leaving the court with little alternative but to recommend

14  dismissal.

15         Finally, as to the fourth factor, the public policy favoring disposition of cases on their

16  merits, that factor is outweighed by the other Ferdik factors.  Indeed, it is Candle3's own failure

17  to prosecute the case and comply with the rules that precludes a resolution on the merits.

18         Therefore, the Ferdik factors indicate dismissal of Candle3's counterclaims is appropriate.

19                                    **RECOMMENDATIONS**

20         Accordingly, it is HEREBY RECOMMENDED that:

21         1.  Plaintiffs' Motion for Default Judgment (ECF No. 130) be GRANTED;

22         2.  Plaintiffs be awarded final judgment in the amount of $3,340,256; and

23         3.  Candle3's counterclaims (ECF No. 59) be DISMISSED WITH PREJUDICE pursuant

24              to Federal Rule of Civil Procedure 41(b) for failure to prosecute.

25  These findings and recommendations are submitted to the United States District Judge assigned to

26  the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after

27  being served with these findings and recommendations, any party may file written objections with

28  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

1    Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served

2    on all parties and filed with the court within seven (7) days after service of the objections.  The

3    parties are advised that failure to file objections within the specified time may waive the right to

4    appeal the district court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez</u>

5    <u>v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

6                                            **<u>ORDER</u>**

7            Given the above recommendations, the court also ORDERS:

8        1.  Plaintiffs shall file their motion for attorneys' fees within 14 days of the date of these

9            findings and recommendations.  This motion (or request for an extension of time to do

10           so) shall be addressed to the assigned district judge; and

11       2.  Plaintiffs shall also inform the district court of their intent regarding the three fraud-

12           based claims asserted in the third amended complaint.

13   Dated:  April 6, 2021

14

15                                              KENDALL J. NEWMAN
                                                UNITED STATES MAGISTRATE JUDGE
16   pric.1851

17

18

19

20

21

22

23

24

25

26

27

28

                                                   13